**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

NICHOLAS ELLIS,
an individual,                                    Case No.:

      Plaintiff,

v.

SUFFOLK FEDERAL
CREDIT UNION, d/b/a
SUFFOLK CREDIT UNION,
a federal credit union, and
EXPERIAN INFORMATION
SOLUTIONS, INC.,
a foreign for-profit corporation,

      Defendants.

_____/

## COMPLAINT

**COMES NOW**, Plaintiff, NICHOLAS ELLIS (hereinafter, "Plaintiff"), by and through the undersigned counsel, and hereby sues Defendants, SUFFOLK FEDERAL CREDIT UNION, d/b/a SUFFOLK CREDIT UNION (hereinafter, "SFCU") AND EXPERIAN INFORMATION SOLUTIONS, INC. (hereinafter, "Experian") (hereinafter collectively, "Defendants"). In support thereof, Plaintiff states:

## PRELIMINARY STATEMENT

1.      This is an action brought by an individual consumer for damages for SFCU's violations the Fair Credit Reporting Act, 15 United States Code, Section 1681 *et seq*. (hereinafter, the "FCRA") wherein SFCU improperly credit-reported and

subsequently verified its credit reporting of erroneous and fictitious information (hereinafter collectively, "the Accounts") on Plaintiff's personal consumer credit reports and credit files. Specifically, Defendant reported—and subsequently verified—an unrelated third-party's Accounts on Plaintiff's consumer credit report and in Plaintiff's consumer credit file as maintained by Experian.

2.     This is an action for damages for violations of the Fair Credit Reporting Act, 15 United States Code, Section 1681 *et seq*. (hereinafter, the "FCRA") wherein Experian unlawfully reported erroneous and fictitious information on Plaintiff's personal consumer credit reports and credit files regarding an unknown third-party and continued to report such erroneous information after Experian received disputes from Plaintiff.

## **JURISDICTION, VENUE, AND PARTIES**

3.     Jurisdiction of this Court arises under 28 United States Code, Section 1331, as well as pursuant to the FCRA, 15 United States Code Section 1681, *et seq*.

4.     Defendants are subject to the jurisdiction of this Court as Defendants each regularly transact business in this District, and the events described herein occur in this District.

5.     Venue is proper in this District as the acts and transactions described herein occur in this District.

6.     At all material times herein, Plaintiff is a natural person residing in Hernando County, Florida.

7.      At all material times herein, SFCU is a federal credit union with its principal place of business located at 3681 Horseblock Road, Medford, New York 11763.

8.      At all material times herein, Experian is a for-profit corporation existing under the laws of the state of Ohio with its principal place of business located at 475 Anton Boulevard, Costa Mesa, California 92626.

## FCRA STATUTORY STRUCTURE

9.      Congress enacted the FCRA requiring consumer reporting agencies to adopt reasonable procedures for meeting the needs of commerce for consumer credit, personnel, insurance, and other information in a manner fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy, and proper utilization of such information. *See* 15 United States Code, Section 1681b.

10.     The FCRA limits access to a consumer's credit report for certain limited permissible purposes. *See* 15 United States Code, Section 1681b(a).

11.     Under the FCRA, a person shall not use or obtain a consumer report for any purpose unless the consumer report is obtained for a purpose for which the consumer report is authorized to be furnished under the FCRA, and the purpose is certified in accordance with the FCRA, Section 1681e. *See* 15 United States Code, Section 1681b(f).

12.     Additionally, under the FCRA, whenever a consumer reporting agency prepares a consumer report, it shall follow reasonable procedures to assure

*maximum possible accuracy* of the information concerning the individual about whom the report relates. 15 U.S.C. § 1681e(b) (emphasis added).

13.    Any person who willfully fails to comply with any requirement imposed under the FCRA with respect to any consumer, is liable to that consumer: in an amount equal to the sum of any actual damages sustained by the consumer as a result of the failure; statutory damages of not less than $100 and not more than $1,000; such amount of punitive damages as the court may allow; and the costs of the action together with reasonable attorneys' fees. *Id.* at § n.

14.    Under the FCRA, any person who is negligent in failing to comply with any requirement imposed with respect to any consumer, is liable to that consumer in an amount equal to the sum of any actual damages sustained by the consumer as a result of the failure and the costs of the action together with reasonable attorneys' fees. *Id.* at § o.

## **GENERAL ALLEGATIONS**

15.    At all material times herein, Plaintiff is a "consumer" as defined by 15 United States Code, Section 1681a(c).

16.    At all material times herein, SFCU, itself and through its subsidiaries, regularly services credit union accounts—and credit reports debts associated with the same—allegedly owed by consumers residing in Hernando County, Florida.

17.    At all material times herein, SFCU is a "person" who furnishes information to credit reporting agencies as provided in the FCRA and as defined by

15 United States Code, Section 1681s-2.

18.    At all material times herein, Defendants are each a "person" as defined by 15 United States Code, Section 1681a(b).

19.    At all material times herein, SFCU reports information concerning erroneous and fictitious information on Plaintiff's personal consumer credit reports and credit files regarding an unrelated third-party, referenced by account numbers both beginning 23- (hereinafter collectively, the "Accounts").

20.    At all material times herein, Plaintiff did not open the Accounts, Plaintiff did not authorize any individual or entity to open the Accounts in his name, Plaintiff did not use the Accounts in any manner, and Plaintiff did not receive the benefit of any goods or services obtained as a result of any transactions made using the Accounts.

21.    At all material times herein, Experian is a "consumer reporting agency" as defined in 15 United States Code, Section 1681a(f) of the FCRA and regularly engages in the business of assembling, evaluating, and disseminating information concerning consumers for the purpose of furnishing consumer reports.

22.    Experian disburses such consumer reports to third parties under contract in return for monetary compensation.

23.    At all material times herein, Defendants act themselves or through their respective agents, employees, officers, members, directors, successors, assigns, principals, trustees, sureties, subrogees, representatives, third-party vendors, and

insurers.

24.    All necessary conditions precedent to the filing of this action occurred, or Defendants voluntarily waived the same.

## FACTUAL ALLEGATIONS

25.    On or about December 4, 2023, Plaintiff applied for a mortgage loan application hoping to be pre-approved to purchase a personal residence.

26.    As a result of the immediately-aforementioned loan application, Plaintiff learned—for the first time—that Plaintiff's Experian credit report contained numerous accounts (including the Accounts), none of which belonged to Plaintiff.

27.    In addition to the two (2) Accounts reported by SFCU, Experian reported *at least* thirteen (13) tradeline accounts that did not belong to Plaintiff.

28.    More specifically, as of December 4, 2023, Plaintiff's Experian credit report included tradeline accounts reported by Ally Financial, Barclays Bank, BestBuy/Citibank, Capital One, Citicards, Comenity Bank, FNB Omaha, JPMorgan Chase Bank, Kohls/Capital One, TBOM Retail/CCI, TD Bank, Valley National Bank, and Wells Fargo Dealer Services, none of which belonged to Plaintiff.

29.    Notably, both Plaintiff's Equifax and Trans Union reports were and remain accurate as of the date of this Complaint, and such reports never included the erroneous tradeline information reported by Experian.

30.    On or about December 5, 2023, Plaintiff called Experian and disputed

6

all account information that did not belong to Plaintiff, including the Accounts.

31.    In response, Experian's agent, employee, or representative advised Plaintiff that Experian would remove each erroneous account within seventy-two (72) hours.

32.    Despite Experian's assurances that the erroneous accounts would be removed from Plaintiff's Experian reports and Experian credit file, Experian failed to do so within seventy-two (72) hours.

33.    On or about December 8, 2023 and again on December 11, 2023, Plaintiff obtained copies of his Experian credit report (hereinafter, the "December Credit Reports"). Please see attached true and correct copies of Plaintiff's December Credit Reports labeled as **Exhibit "A."**

34.    Plaintiff's December Credit Reports included fifteen (15) tradeline accounts that did not belong to Plaintiff, including the SFCU Accounts. *See* Ex. A.

35.    Notably, as of December 8, 2023 and December 11, 2023, Plaintiff's Experian FICO credit score was 724.  *See* Ex. A at p. 2.

36.    On or about December 13, 2023, Plaintiff sent a letter to Experian, with the assistance of his attorneys, both disputing Experian's reporting of the Accounts and requesting that Experian remove all erroneous accounts referenced listed within Plaintiff's dispute letter (hereinafter, the "Plaintiff's First Dispute Letter").  Please see attached a true and correct copy of Plaintiff's First Dispute Letter labeled as **Exhibit "B."**

37.    Additionally, Plaintiff disputed three (3) hard inquiries by SFCU and JPMorgan Chase that were not authorized by Plaintiff and instead belonged to an unknown third-party.

38.    Plaintiff's First Dispute Letter enclosed copies of his Equifax and Trans Union reports, showing the only accurate accounts that *should be* reported by Experian.

39.    Experian received Plaintiff's First Dispute Letter.

40.    Experian failed to respond to Plaintiff's First Dispute Letter.

41.    On or about January 22, 2024, and because Experian failed to respond to Plaintiff's First Dispute Letter, Plaintiff obtained a copy of his Experian credit report (hereinafter, the "January Credit Report"). Please see attached a true and correct copy of Plaintiff's January Credit Report labeled as **Exhibit "C."**

42.    Following Plaintiff's First Dispute Letter, Experian removed thirteen (13) of the fifteen (15) erroneous tradeline accounts.

43.    As a result, Plaintiff's Experian FICO credit score increased from 724 to 817. *See* Ex. C.

44.    However, despite Plaintiff's First Dispute Letter, Experian continued to report the two (2) SFCU tradeline Accounts that did not belong to Plaintiff. *See* Ex. C.

45.    Furthermore, Experian failed to mark the SFCU Accounts as disputed on Plaintiff's Experian credit report and in Plaintiff's Experian credit file. *Id.*

46.     On or about January 23, 2024, and as a result of Experian's failure to remove the SFCU Accounts that did not belong to Plaintiff following Plaintiff's First Dispute Letter, Plaintiff sent *another* letter to Experian, again with the assistance of his attorneys, wherein Plaintiff *again* disputed Experian's reporting of the SFCU Accounts and *again* requested that Experian remove the erroneous Accounts from Plaintiff's Experian credit reports and credit file (hereinafter, the "Plaintiff's Second Dispute Letter").  Please see attached a true and correct copy of Plaintiff's Second Dispute Letter labeled as **Exhibit "D."**

47.     Experian received Plaintiff's Second Dispute Letter.

48.     Experian communicated Plaintiff's Second Dispute Letter to SFCU.

49.     On or about January 29, 2024, Experian sent a copy of Plaintiff's Experian credit report to Plaintiff.  Please see attached a true and correct copy of said Experian credit report labeled as **Exhibit "E."**

50.     Notably, as of January 29, 2024, Experian and SFCU were *still* reporting the Accounts on Plaintiff's Experian credit reports and in Plaintiff's Experian credit file.

51.     On or about February 14, 2024, Plaintiff again attempted to apply for pre-approval on a mortgage loan.  However, Plaintiff's loan officer advised Plaintiff that Plaintiff's Experian credit score now showed as zero (0) rather than above 800.

52.     On or about February 22, 2024, Experian sent its results of Plaintiff's Second Dispute Letter to Plaintiff via email, which included a full copy of Plaintiff's

Experian credit report.  Please see attached a true and correct copy of said Experian credit report labeled as **Exhibit "F."**

53.    Despite Plaintiff's repeated disputes, Experian and SFCU *still* reported the Accounts as belonging to Plaintiff, and both Accounts included the comment "[t]his item remained unchanged from our processing of your dispute in Feb 2024." *See* Ex. F.

54.    In other words, Experian communicated Plaintiff's Second Dispute Letter to SFCU, and SFCU purportedly "verified" its reporting of the Accounts as belonging to Plaintiff.

55.    On or about February 28, 2024, Plaintiff called Experian directly to *again* dispute Experian's and SFCU's reporting of the Accounts.

56.    During the phone call, Experian's employee, agent, or representative advised Plaintiff that SFCU repeatedly verified its reporting of the Accounts with Experian.

57.    Between December 2023 and the date of this Complaint, Experian compiled, generated, and published Plaintiff's Experian credit reports including erroneous tradeline accounts that did not belong to Plaintiff, including but not limited to the Accounts, and provided such erroneous information to Plaintiff's current creditors and potential lenders.

58.    More specifically, Experian published Plaintiff's Experian credit report and provided erroneous information to Advantage Credit on behalf of Certified

Mortgage Plann, Xactus-Avantus/Rocket Mortgage, American Express, Auto Approve LLC, Bank of America, Capital One, DataMYX/Ally Bank, DataMYX/Better Mortgage, DataMTY/Freedom Mortgage Corp, DataMYX/Rocket Mortgage, Discover Financial, JPMorgan Chase Bank, LendingClub Corp., Marketing f/k/a Repo Management, and USAA Savings Bank, in addition to others.

## **DAMAGES**

59.     Defendants' conduct constitutes a knowing and willful decision to report erroneous information related to an unknown third-party on Plaintiff's consumer credit reports, as the above-referenced erroneous information—including multiple erroneous trade-lines, names, addresses, telephone numbers, and an erroneous social security number—unequivocally indicate that such personal information and trade-line information resulted from a mixed credit file with another person and should not be reported on Plaintiff's credit reports.

60.     In today's age of digital piracy, the safekeeping of one's personal and sensitive information—such as addresses, telephone numbers, account numbers, and social security numbers—are of paramount importance.

61.     Plaintiff retained Undersigned Counsel for the purpose of pursuing this matter against Defendants, and Plaintiff is obligated to pay his attorneys a reasonable fee for their services.

62.     The FCRA, Sections 1681n or 1681o, or both, provide for the award of

up to $1,000 statutory damages, actual damages, punitive damages, as well as an award of attorneys' fees and costs to Plaintiff, should Plaintiff prevail in this matter against Defendants.

63.     As a result of Defendants' actions, Plaintiff was denied a mortgage loan.

64.     Additionally, as a result of being denied a mortgage loan, Plaintiff and his family have been unable to move closer to their place of work, are unable to purchase a home with sufficient space for family needs, and have missed the opportunity to spend time with friends and family due to their current living situation, culminating in lost time and additional out-of-pocket expenses.

65.     Plaintiff further dealt with the stress and anxiety of feeling hopeless, believing that he would be denied credit as a result of the erroneous and incorrect reporting of the erroneous Accounts.

66.     Plaintiff suffered additional actual damages in the form of damage to his credit reputation, higher credit costs, and Plaintiff refrained from applying for new credit for fear that he would be denied because of the objectively inaccurate reporting referenced herein.

67.      Plaintiff has dealt with this inaccurate reporting on his Experian credit reports for months, and despite all efforts, has been unable to fix the erroneous reporting.

**COUNT ONE**
**FAIR CREDIT REPORTING ACT –**
**VIOLATION OF 15 UNITED STATES CODE, SECTION 1681s-2(b)**
**(as to SFCU only)**

Plaintiff re-alleges paragraphs one (1) through sixty-seven (67) as if fully restated herein and further states as follows:

68.    SFCU is subject to, and violated the provisions of, 15 United States Code, Section 1681s-2(b), by willfully and/or negligently publishing or furnishing inaccurate trade-line information within Plaintiff's credit reports, failing to fully and properly re-investigate Plaintiff's disputes, failing to review all relevant information regarding the same, and failing to request that Experian delete the Accounts from Plaintiff's credit reports and credit file after investigating Plaintiff's repeated disputes.

69.    As described above, Plaintiff was not and is not personally liable for the Accounts, because: (i) Plaintiff does not have any active or closed credit accounts with SFCU referenced by the account numbers listed; (ii) Plaintiff did not personally apply for the Accounts or open the Accounts; (iii) Plaintiff did not authorize any person to open to the Accounts in Plaintiff's name or on Plaintiff's behalf; (iv) Plaintiff possessed no knowledge of the Accounts prior to obtaining his Experian credit reports in December 2023; and (v) Plaintiff did not receive the benefit of any money, goods, or services from any charges or transactions made using the Accounts.

70.    Despite SFCU receiving notice of Plaintiff's disputes from Experian including the information and documents referenced in the above paragraph— SFCU willfully and/or negligently failed to request that Experian delete the

tradelines associated with the Accounts and continued to report the fictitious information to Experian including balances due on the Accounts.

71.    Also, despite Plaintiff's repeated disputes indicating he never opened the Accounts and the Accounts do not belong to him, SFCU continued to verify the Accounts as belonging to Plaintiff.

72.    Rather than delete its reporting of the illegitimate Accounts after receiving notice of Plaintiff's repeated disputes, SFCU inaccurately "verified" or "updated" its erroneous and fictitious reporting of the Accounts which ultimately reflected negatively and adversely on Plaintiff's credit reports and credit files as maintained by Experian.

73.    SFCU's refusal to request that Experian delete the tradelines associated with the Accounts was intentionally, willfully, and knowingly done as SFCU clearly possessed knowledge that the Accounts did not belong to Plaintiff and did not bear his name nor his social security number, but instead, the name and social security number of an unrelated third-party.

74.    SFCU's investigation/re-investigations were not conducted in good faith.

75.    SFCU's investigation/re-investigations were not conducted reasonably.

76.    SFCU's investigation/re-investigations were not conducted using all information and documents reasonably available to SFCU.

77.    As a result of SFCU's conduct, actions, and inactions, Plaintiff suffered damage to his credit reputation and credit worthiness, was deterred from making credit applications as he believed he would not be able to obtain favorable credit terms as a result of SFCU's erroneous and fictious reporting of the Accounts, did not wish to further damage his credit score with futile credit inquires, and he was continually evaluated for credit using consumer reports that reported the Accounts as high balance payment obligations resulting in the Accounts being reported as belonging to Plaintiff rather than the true third party who opened them.

78.    SFCU's conduct was a direct and proximate cause of, as well as a substantial factor in, causing the serious injuries, damages, and harm to Plaintiff as stated herein.

79.    SFCU's violations of 15 United States Code, Section 1681s-2(b), constitute negligent or willful noncompliance—or both—with the FCRA, and entitle Plaintiff to actual damages, statutory damages, punitive damages, as well as attorneys' fees and costs as enumerated in 15 United States Code, Sections 1681n, or 1681o, or both.

### COUNT TWO:
### FAIR CREDIT REPORTING ACT –
### VIOLATION OF 15 UNITED STATES CODE, SECTION 1681e(b)
#### (as to Experian only)

Plaintiff re-alleges paragraphs one (1) through sixty-seven (67) as if fully restated herein and further states as follows:

80.    Experian is subject to, and violated the provisions of, 15 United States

Code, Section 1681e(b), by failing to establish or follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit reports and credit files published and maintained concerning Plaintiff.

81.    Experian willfully or negligently failed, or both, to establish or follow reasonable procedures to assure maximum possible accuracy in the preparation of Plaintiff's credit reports regarding the erroneous Accounts and erroneous personal information.

82.    Specifically, Experian reported *at least* fifteen (15) erroneous trade-line accounts (including the Accounts) and at least three (3) erroneous hard inquiries that do not belong to Plaintiff and instead belong to an unknown third-party.

83.    Such reporting is false and evidences Experian's failure to establish or follow reasonable procedures to assure the maximum possible accuracy of Plaintiff's credit reports and credit file.

84.    Experian's conduct constitutes a knowing and willful decision to report erroneous information related to an unknown third-party on Plaintiff's consumer credit reports, as the above-referenced erroneous information unequivocally indicates a mixed credit file between Plaintiff and a third-party, clearly demonstrating that such information should not have been reported on Plaintiff's credit reports.

85.    Experian's publishing of Plaintiff's highly sensitive and personal information to third-parties without a right or need to know such information increases the risk of identity theft and is the exact type of harm the FCRA is designed

to protect.

86.     Between December 2023 and the date of this Complaint, Experian compiled, generated, and published Plaintiff's Experian credit reports including erroneous tradeline accounts that did not belong to Plaintiff, including but not limited to the Accounts, and provided such erroneous information to Plaintiff's current creditors and potential lenders.

87.     As a result of Experian's conduct, actions, and inactions, Plaintiff suffered actual damages, including but not limited to credit denials following mortgage loan applications.

88.     Experian's conduct was a direct and proximate cause of, as well as a substantial factor in, the serious injuries, damages, and harm to Plaintiff as stated herein.

89.     Experian's violations of 15 United States Code, Section 1681e(b), constitute negligent or willful noncompliance—or both—with the FCRA, and entitle Plaintiff to actual damages, statutory damages, punitive damages, as well as attorneys' fees and costs as enumerated in 15 United States Code, Sections 1681n, or 1681o, or both.

## COUNT THREE:
## FAIR CREDIT REPORTING ACT –
## VIOLATION OF 15 UNITED STATES CODE
## SECTIONS 1681i(a)(1), 1681i(a)4, and 1681i(a)(5)
### (as to Experian only)

Plaintiffs re-alleges paragraphs one (1) through sixty-seven (67) as if fully

restated herein and further states as follows:

90.    Experian is subject to, and violated the provisions of, 15 United States Code, Sections: 1681i(a)(1) by failing to conduct reasonable re-investigations of Plaintiff's disputes to determine whether the disputed information was inaccurate and by failing to subsequently update the inaccurate information in Plaintiff's credit reports and credit files; 1681i(a)(4) by failing to review and consider all relevant information received in Plaintiff's disputes, including all relevant attachments; and 1681i(a)(5) by failing to update or delete any information that was the subject of Plaintiff's disputes found to be inaccurate or that could not be verified.

91.    Specifically, Experian willfully and/or negligently refused to properly re-investigate Plaintiff's consumer reports upon receiving Plaintiff's disputes, as described herein.

92.    Overall, Plaintiff's multiple disputes provided Experian with sufficient information allowing Experian to identify that the Accounts and information was not Plaintiffs and should be removed from Plaintiff's credit reports and files.

93.    Experian's failure to review and consider all information received in Plaintiff's disputes was done in bad faith.

94.    Notably, following Plaintiff's First Dispute, Experian deleted and/or removed thirteen (13) tradelines that did not belong to Plaintiff, but Experian failed to delete the two (2) Accounts furnished by SFCU.

95.    Experian did not request any documents from the furnishers

corroborating information furnished and verified by the furnishers in response to any of Plaintiff's disputes.

96.     Given that Plaintiff did not open the Accounts and did not authorize any person to initiate the Accounts on his behalf or in his name, and given that Experian did not request any documents from the furnishers supporting the furnisher's reporting of the Accounts, Experian could not reasonably verify that Plaintiff is personally responsible for the Accounts.

97.     Despite Experian receiving Plaintiff's multiple disputes, the Defendants failed to delete the Accounts from Plaintiff's credit reports and credit files.

98.     Experian continues to inaccurately report the Accounts on Plaintiff's credit reports and files as of the date of this Complaint.

99.     As such, Experian's re-investigations were not conducted in such a way as to assure whether information regarding Plaintiff and the Accounts was inaccurate and each failed to subsequently update and remove the inaccurate information in Plaintiff's credit reports and credit files.

100.    Such reporting is false and evidences Experian failure to conduct reasonable re-investigations of Plaintiff's repeated disputes.

101.    Experian's re-investigations of Plaintiff's disputes were not conducted reasonably.

102.    Experian's re-investigations merely copied and relied upon the inaccurate information conveyed by furnishers.

103.    Experian's re-investigations of Plaintiff's disputes were not conducted in good faith.

104.    Experian's re-investigation procedures are unreasonable.

105.    Experian's re-investigations of Plaintiff's disputes were not conducted using all information reasonably available to Experian.

106.    Experian's re-investigations were *per se* deficient by reason of these failures in Experian's reinvestigations of Plaintiff's disputes.

107.    As a result of Experian's conduct, actions, and inactions, Plaintiff suffered damage to his credit reputation and credit worthiness, was deterred from making credit applications as he believed he would not be able to obtain favorable credit terms as a result of Experian's derogatory and continued reporting of the Accounts, did not wish to further damage his credit scores with futile credit inquires, and he was continually evaluated for credit using consumer reports that reported the Accounts that were not his.

108.    As a result of Experian's conduct, actions, and inactions, Plaintiff suffered actual damages, including but not limited to credit denials following mortgage loan applications.

109.    Experian's actions were a direct and proximate cause of, as well as a substantial factor in, the serious injuries, damages, and harm to Plaintiff as stated herein.

110.    Experian's actions in violation of 15 United States Code, Section

1681i(a)(1), constitute negligent or willful noncompliance—or both—with the FCRA, and entitle Plaintiff to actual damages, statutory damages, punitive, damages, as well as attorneys' fees and costs enumerated in 15 United States Code, Sections 1681n or 1681o, or both.

## PRAYER FOR RELIEF

**WHEREFORE**, as a direct and proximate result of Defendants' conduct, Plaintiff respectfully requests an entry of:

      a.    Judgment against Defendants for maximum statutory damages for violations of the FCRA;

      b.    Actual damages in an amount to be determined at trial;

      c.    Compensatory damages in an amount to be determined at trial;

      d.    Punitive damages in an amount to be determined at trial;

      e.    An award of attorney's fees and costs; and

      f.    Any other such relief the Court may deem proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury on all issues triable by right.

## SPOLIATION NOTICE AND DEMAND TO RETAIN EVIDENCE

Plaintiff hereby gives notice to Defendants and demands that Defendants and their affiliates safeguard all relevant evidence—paper, electronic documents, or data—pertaining to this litigation as required by law.

## PLAINTIFF'S DESIGNATION OF LEAD COUNSEL

Plaintiff, NICHOLAS ELLIS, by and through the undersigned counsel, pursuant to Middle District of Florida Local Rule 2.02(a), hereby designates Aaron M. Swift, Esq. as Lead Counsel for Plaintiff.

Respectfully submitted,

**SWIFT LAW PLLC**

*/s/ Aaron M. Swift*
**Aaron M. Swift, Esq., FBN 0093088**
Jordan T. Isringhaus, Esq., FBN 0091487
Sean E. McEleney, Esq., FBN 125561
11300 4th Street North, Suite 260
St. Petersburg, FL 33716
Phone: (727) 755-3676
Fax: (727) 255-5332
aswift@swift-law.com
jisringhaus@swift-law.com
smceleney@swift-law.com
*Co-Counsel for Plaintiff*

and

**BANNON LAW GROUP**

*/s/ G. Tyler Bannon*
**G. Tyler Bannon, Esq., FBN 105718**
1901 Dr. M. L. King Jr. St. N.
St. Petersburg, FL 33704
Phone: (727) 896-4455
Fax: (727) 895-1312
tyler@rbannonlaw.com
jessica@rbannonlaw.com
*Co-Counsel for Plaintiff*