UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

NICHOLAS ELLIS,

        Plaintiff,

v.                                          Case No. 8:24-cv-00850-JLB-AEP

EXPERIAN INFORMATION
SOLUTIONS, INC., et al.,

        Defendants.
_____/

## REPORT AND RECOMMENDATION

    This matter comes before the Court upon Defendant Experian Information Solutions, Inc.'s Motion to Compel Arbitration (Doc. 26). Plaintiff responded in opposition (Doc. 28) to which Defendant filed a Reply (Doc. 35) and Notice of Supplemental Authority (Doc. 36). A hearing concerning the matter was held on September 24, 2024. For the reasons stated herein, it is recommended that the Motion be granted.

    **I.**     **Background**

    Defendant Experian Information Solutions, Inc. is a credit reporting agency. (Doc. 1, ¶ 1). Plaintiff alleges that on or around December 4, 2023, he discovered his Experian Credit Report contained erroneous tradeline information. (Doc. 1, ¶ 25–29). As a result, Plaintiff contacted Defendant Experian multiple times via

telephone and written letter, requesting the inaccuracies in his credit report be corrected. (Doc. 1, ¶ 30–56). However, Defendant Experian failed to fully correct its credit report of Plaintiff. Thereafter, Plaintiff filed a complaint under the FCRA against Defendants, including Experian. (Doc. 1, ¶ 57–58).

Defendant Experian now moves to compel arbitration pursuant to an agreement between Plaintiff and its affiliate, ConsumerInfo.com, Inc. ("CIC") which also does business as Experian Consumer Services ("ECS"). (Doc. 27, at 3). Prior to the initiation of this action, Plaintiff enrolled in a credit monitoring service, CreditWorks, through the CIC/ECS website and agreed to its "Terms of Use" which contain an arbitration provision enforceable by Experian. (Doc. 27, at 3–4, 13–29).

## II.    Legal Standard

Arbitration agreements are governed by the Federal Arbitration Act (FAA), 9 U.S.C. § 2 (2006), which establishes a national policy that favors the resolution of disputes by arbitration when the parties have contracted for that mode of dispute resolution. *Preston v. Ferrer*, 552 U.S. 346, 353 (2008). Section 2 of the FAA provides:

> A written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2 (emphasis added). Under the FAA, courts are required to compel arbitration upon a showing that "(a) the plaintiff entered into a written arbitration

2

agreement that is enforceable 'under ordinary state-law' contract principles and (b) the claims before the court fall within the scope of that agreement." *Lambert v. Austin Ind.*, 544 F.3d 1192, 1195 (11th Cir. 2008) (quoting *Paladino v. Avnet Computer Techs., Inc.*, 134 F.3d 1054, 1061 (11th Cir. 1998)).

The language of Section 2 clearly demonstrate that Congress strongly favors upholding arbitration agreements. *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.*, 460 U.S. 1, 24 (1983); *see also Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 219–20 (1985) (discussing the legislative history of the FAA and holding that the purpose behind the FAA is to ensure judicial enforcement of private arbitration agreements). However, "while doubts concerning the scope of an arbitration clause should be resolved in favor of arbitration, the presumption does not apply to disputes concerning whether an agreement to arbitrate has been made." *Dasher v. RBC Bank (USA)*, 745 F.3d 1111, 1116 (11th Cir. 2014) (quotation marks and citation omitted.

"Federal law establishes the enforceability of arbitration agreements, while state law governs the interpretation and formation of such agreements." *Employers Ins. of Wausau v. Bright Metal Specialties, Inc.*, 251 F.3d 1316, 1322 (11th Cir. 2001) (citing *Perry v. Thomas*, 482 U.S. 483 (1987)). Moreover, a motion to compel arbitration is evaluated under the same standard that a motion for summary judgment would be. *Bazemore v. Jefferson Capital Sys., LLC*, 827 F.3d 1325, 1333 (11th Cir. 2016). Thus, "a district court may conclude as a matter of law that parties did or did not enter into an arbitration agreement only if 'there is no genuine dispute

3

as to any material fact' concerning the formation of such an agreement." *Id.* (quoting Fed. R. Civ. P. 56(a)).

### III. Legal Analysis

Here, Plaintiff argues that the declaration submitted by CIC's Director of Operations, Dan Smith, is insufficient to establish the existence of an arbitration agreement between the parties. In his declaration, Smith attested to the process Plaintiff underwent to enroll in CreditWorks, including the webform Plaintiff filled out, the acceptance button Plaintiff clicked binding him to CreditWorks' Terms of Use, and the date the transaction was completed. (Doc. 27, ¶ 3–5). Specifically, Smith explained that prior to clicking the acceptance button, Plaintiff would have seen a message informing him that clicking the button would bind Plaintiff to the CreditWorks' Terms of Use. (Doc. 27, ¶ 3). Moreover, the "Terms of Use Agreement" was set-off in blue text, and if clicked, would display the full terms of the agreement, including the arbitration provision. (Doc. 27, ¶ 4). Smith further detailed that Plaintiff could not have enrolled in CreditWorks without manifesting his assent to the Terms of Service. (Doc. 27, ¶ 3).

Notably, Plaintiff does not dispute the scope of the arbitration agreement, or Defendant Experian's relationship with CIC/ECS. Nor does Plaintiff maintain that he did not accept CreditWorks' Terms of Service. Instead, Plaintiff disputes only the sufficiency of Defendant Experian's evidence. Plaintiff maintains that because Smith does not have personal knowledge, there still remains a genuine issue of material fact as to whether Plaintiff assented to the arbitration agreement.

4

Under Rule 56, a party may object to any material cited to support a fact, including a declaration, if that material "cannot be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2). However, a declaration is admissible in evidence if supported by personal knowledge. Here, the form and substance of the declaration submitted by Smith demonstrates his personal knowledge of the subject matter therein and thus meets the prerequisite to be designated as admissible evidence under Rule 56.

In his declaration, Smith identifies that he is the Director of Product Operations for ConsumerInfo.com, Inc. and has been employed by CIC since 2010 (Doc. 27, ¶ 1). As part of his role Smith is required to understand "how consumers enroll, the forms they must complete to enroll, as well as the Terms of Use governing such services." (Doc. 27, ¶ 1). Furthermore, his role requires that he maintain knowledge of:

> Experian's electronic databases that store consumer enrollment information, including the webpages a consumer would have encountered to complete their enrollment into CreditWorks, the personally identifiable information entered when enrolling, which links or buttons the consumer clicked on, and date and time of the consumer's acceptance of the Terms of Use.

(Doc. 27, ¶ 1). Based on his familiarity with CreditWorks' enrollment process and Experian's databases that store consumer account information, Smith is able to retrieve a consumer's CreditWorks membership information when presented with that consumer's personally identifiable information. (Doc. 27, ¶ 1). This membership information allows Smith to confirm the date and time of enrollment, the period of the Terms of Use agreed to, and the exact oath the consumer

5

encountered when completing their enrollment in CreditWorks. (Doc. 27, ¶ 1). Here, using this process, Smith was able to determine that Plaintiff enrolled in CreditWorks on August 27, 2019, and articulate the different steps Plaintiff would have undertaken to successfully do so as discussed above. (Doc. 27, ¶ 3).

In arguing that Smith's declaration is not supported by personal knowledge, Plaintiff primarily relies on one case from the Middle District of Florida, *Lamonaco v. Experian Information Solutions, Inc.*, No. 6:23-cv-1326-PGB-LHP, 2024WL 1703112, at *1 (M.D. Fla. Apr. 19, 2024). In that case, the plaintiff had similarly brought suit against Defendant Experian to which Experian asserted that the plaintiff had agreed to arbitrate her claims when she signed up for a credit monitoring service provided by CIC. *Lamonaco*, 2024WL 1703112, at *1. In support of this argument, Experian filed the declaration of David Williams, CIC's Vice President of Business Governance. *Id.* at 4. Therein, Williams made similar attestations to those presented in the declaration of Smith in this matter. *Id.* However, the court found Williams' declaration did not establish personal knowledge because Williams' attestations were based on a review of the membership enrollment data and not direct observation. *Id.* at 5. In the alternative, the Court expected Williams to prove the reliability of these records by showing an "account bearing [plaintiff's] personal information paired with website access logs showing her IP address, evidence she received and responded to a message to verify her account, an uncompromised credit card in her name used to make website

6

purchases, or receipts for any transactions she initiated on the website." *Id.* Respectfully, this Court disagrees.

"Evidence to prove personal knowledge may consist of the witness's own testimony." Fed. R. Civ. P. 56(c)(4); *see also Harvey v. Walmart, Inc.*, No. 23-11213, 2024 WL 1460314, at *2 (11th Cir. Apr. 4, 2024) ("statements in the declarations—that they were based on personal knowledge—are themselves sufficient evidence of personal knowledge"). Here, Smith's declaration fully details his job duties, familiarity with CreditWorks, and ability to retrieve customer data. Moreover, unlike the declaration presented in *Lamonaco*, which did not "describe what sort of account data CIC keeps and was available for [the declarant] to review that would prove [the plaintiff] accessed the website," 2024 WL 1703112, at *5, Smith stated as follows in his declaration:

> Based on my familiarity with the CreditWorks enrollment process and Experian's databases that store consumer account information, I am able to retrieve a consumer's CreditWorks membership information upon receipt of that consumer's personally identifiable information. Once I locate the consumer CreditWorks membership information, I am able to confirm the consumer's membership details, such as the date and time of enrollment, the version of the Terms of Use they agreed to, and the exact path the consumer encountered when completing their enrollment into CreditWorks.

(Doc. 27, ¶ 1). Thus, while Smith may not have attached the specific records he reviewed for Plaintiff to the declaration, this Court is satisfied that the declaration is supported by personal knowledge. In *Hanson v. Experian Info. Sols., Inc.*, the Northern District of Georgia confronted the same argument posed by Plaintiff in this matter and similarly held that the statements of Smith were supported by

7

personal knowledge and Experian's failure to provide the actual documents discussed in Smith's declaration did not render the declaration invalid. *Hanson v. Experian Info. Sols., Inc.*, No. 1:23-CV-4564-MHC-CMS, 2024 WL 3509482, at *8 (N.D. Ga. July 22, 2024). Indeed, numerous courts throughout this Circuit and others have compelled arbitration on nearly identical records. *See, e.g., Myers v. Experian Info. Sols. Inc.*, No. CV-23-01901-PHX-DJH, 2024 WL 2278398, at *3 (D. Ariz. May 20, 2024) (rejecting argument that a declaration provided by Dan Smith was inadmissible and finding "that Mr. Smith's Declaration meets the minimum standards for consideration under Federal Rule of Civil Procedure 56(c)."); *Pecoraro v. Synovus Bank*, No. 23-CV-80789, 2024 WL 167391, at *1 (S.D. Fla. Jan. 16, 2024) ("The Williams Affidavit is competent evidence to show that Plaintiff accepted the Terms of Service Agreements—and the relevant arbitration clause—that were in effect when he enrolled in CreditWorks."); *Knott v. Equifax Info. Servs., LLC*, No. 1:23-CV-00836-TWT-JEM, 2023 WL 6940289, at *2 (N.D. Ga. Sept. 7, 2023), *report and recommendation adopted*, No. 1:23-CV-00836-TWT-JEM, 2023 WL 8824669 (N.D. Ga. Nov. 7, 2023) ("The Court also finds that Defendant has affirmatively shown, via the declaration of Vice President David Williams and the attached exhibits, that Plaintiff accepted and agreed to the Terms of Use Agreement, and that as part of the agreement, he agreed to arbitration of all claims that arise out of his membership in CreditWorks . . . ."); *Pipoly v. Experian Infor. Sols., Inc.*, No. 1:23-CV-925-MHC-CMS, 2023 WL 5184188, at *3 (N.D. Ga. Aug. 2, 2023), *report and recommendation adopted*, No. 1:23-CV-925-MHC-CMS, 2023 WL 5438171

(N.D. Ga. Aug. 21, 2023) ("The terms of the Arbitration Agreement and the Williams Declaration demonstrate that Pipoly and Experian entered into a valid and enforceable agreement."); *Johnson v. Sw. Recovery Servs. Inc.*, No. 3:22-CV-242-X-BH, 2023 WL 1944127, at *3 (N.D. Tex. Jan. 24, 2023), *report and recommendation adopted*, No. 3:22-CV-0242-X-BH, 2023 WL 1879999 (N.D. Tex. Feb. 10, 2023) (ruling that the declaration filed in support of Experian's motion to compel arbitration was based on the declarant's personal knowledge).

Thus, the Court finds that the statements within the Smith declaration constitute admissible evidence under Rule 56 and demonstrate that Plaintiff entered into a valid arbitration agreement. Moreover, Plaintiff has made no contrary assertion. Accordingly, it is hereby

RECOMMENDED:

1. Defendant Experian Information Solutions, Inc.'s Motion to Compel Arbitration (Doc. 26) be GRANTED.

IT IS SO REPORTED in Tampa, Florida, this 23rd day of December 2024.

ANTHONY E. PORCELLI
United States Magistrate Judge

9

## NOTICE TO PARTIES

A party has fourteen days from the date they are served a copy of this report to file written objections to this report's proposed findings and recommendations or to seek an extension of the fourteen-day deadline to file written objections. 28 U.S.C. § 636(b)(1)(C). A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation. *See* 11th Cir. R. 3-1; 28 U.S.C. § 636(b)(1). **Should the parties wish to expedite the resolution of this matter, they may promptly file a joint notice of no objection.**

cc:   Hon. John L. Badalamenti
      Counsel of Record